## IN THE UNITED STATES DISTRICT COURT FOR
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRAD RUSH, as ADMINISTRATOR OF THE ESTATE OF JEFFREY DENNIS, DECEASED, *Plaintiff*, | : : : |
| | : Civil Action No.: |
| v. | : : |
| | : **JURY TRIAL DEMANDED** |
| THE CITY OF PHILADELPHIA and OFFICER RICHARD NICOLETTI, in his individual and official capacity, *Defendants*. | : : : : |

### NOTICE OF REMOVAL

TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA:

Defendant, Officer Richard Nicoletti ("Defendant Nicoletti") by and through his undersigned counsel, Marshall Dennehey Warner Coleman & Goggin, P.C., and Joseph J. Santarone, Esquire, hereby remove the above-captioned matter to this Honorable Court and provide notice of same to the Plaintiff. In support of the removal, Defendant Nicoletti avers as follows:

1.      Plaintiff instituted this action by filing a Complaint in the Court of Common Pleas of Philadelphia County on or about February 27, 2019. A true and correct copy of Plaintiff's Complaint is attached hereto as Exhibit A.

2.      Plaintiff's Complaint was served on both the City of Philadelphia ("Defendant City") and Defendant Nicoletti on February 27, 2019.

3.      Defendant City consents to this removal.

4.     As Defendant Nicoletti was served on February 27, 2019, no Answer or other response to Plaintiff's Complaint has been filed.  In filing this Notice of Removal, Defendant Nicoletti does not waive any defense or counterclaim that may be available to him.

5.     This Notice of Removal is timely filed pursuant to 28 U.S.C. § 1446(b) because it is filed within thirty (30) days of February 27, 2019, the date on which Defendants were served with Plaintiff's Complaint.

6.     Plaintiff's Complaint alleges, *inter alia*, that Defendant Nicoletti used excessive force against Decedent Jeffrey Dennis ("Decedent") while attempting to apprehend Decedent near the intersection of Hegerman Street and Princeton Avenue in Philadelphia on August 20, 2018. *See* Ex. A at ¶¶ 11-41, 114-119.

7.     Plaintiff's Complaint asserts federal claims under 42 U.S.C. § 1983 against Defendant Nicoletti and Defendant City. *See id.* at ¶¶ 114-119, 120-128.

8.     The above-described Civil Action is one over which this Honorable Court has original jurisdiction because Plaintiff's Complaint avers at least one cause of action arising out of the "Constitution, laws or treatises of the United States." 28 U.S.C. § 1331.

9.     Accordingly, Defendants may remove this action to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §1441(a).

**WHEREFORE**, Defendant Nicoletti respectfully requests the above-captioned action currently pending in the Court of Common Pleas of Philadelphia County be removed to this Honorable Court.

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

JOSEPH J. SANTARONE, ESQUIRE
*Attorney for Defendant, Officer Richard
Nicoletti*

DATE:  March 5, 2019

## CERTIFICATE OF SERVICE

I, Joseph J. Santarone, Esquire, attorney for Defendant Officer Richard Nicoletti, hereby certify on this 5th day of March, 2019, that I served a true and correct copy of the foregoing Notice of Removal and all exhibits thereto upon the following counsel of record via e-mail:

**McEldrew Young**
James J. McEldrew, III, Esquire
Daniel Purtell, Esquire
John J. Coyle, Esquire
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

**Merritt Law**
S. Lee Merritt, Esquire
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
slm@merrittatlaw.com
***Counsel for Plaintiff***

Armando J. Brigandi, Esquire
City of Philadelphia Law Department
1515 Arch Street, 14th Floor
Philadelphia, PA 19102
***Counsel for Co-Defendant, The City of Philadelphia***

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

JOSEPH J. SANTARONE, ESQUIRE
*Attorney for Defendant, Officer Richard Nicoletti*

Dated: March 5, 2019

# EXHIBIT A

**McELDREW YOUNG**
James J. McEldrew, III, Esquire
Daniel Purtell, Esquire
John J. Coyle, Esquire
Attorney I.D. No.: 36411 / 310376 / 312084
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

**MERRITT LAW**
S. Lee Merritt, Esquire
Attorney I.D. No.: 314891
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
slm@merrittatlaw.com

*Filed and Attested by the
Office of Judicial Records
05 MAR 2019 01:27 pm
M. BRYANT*

*Attorneys for Plaintiff*

| | | |
|---|---|---|
| **BRAD RUSH, as ADMINISTRATOR OF THE ESTATE OF JEFFREY DENNIS, DECEASED** 123 S. Broad Street, Suite 2250 Philadelphia, PA 19109 | : : : : : : | **COURT OF COMMON PLEAS** **PHILADELPHIA COUNTY** |
| **Plaintiffs,** v. | : : : : | **FEBRUARY TERM 2019** |
| **THE CITY OF PHILADELPHIA,** c/o City of Philadelphia Law Department 1515 Arch Street – 14th Floor Philadelphia, PA 19102 | : : : : : | **Civil Action No. _____** |
| **OFFICER RICHARD NICOLETTI, in his official and individual capacity, c/o City of Philadelphia Law Department 1515 Arch Street – 14th Floor Philadelphia, PA 19102** | : : : : : : | **MAJOR JURY PROGRAM** **JURY TRIAL DEMANDED** |
| **Defendants.** | : | |

### NOTICE TO DEFEND

| NOTICE | AVISO |
|---|---|
| You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you. *You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.* **Philadelphia Bar Association Lawyer Referral and Information Service** | Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y procedera contra la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted. *Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.* |

| One Reading Center<br>Philadelphia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 | Asociacion De Licenciados De Filadelfia<br>Servicio De Referencia E<br>Informacion Legal<br>One Reading Center<br>Filadelfia, Pennsylvania 19107<br>(215) 238-6333<br>TTY (215) 451-6197 |
|---|---|

**McELDREW YOUNG**
James J. McEldrew, III, Esquire
Daniel Purtell, Esquire
John J. Coyle, Esquire
Attorney I.D. No.: 36411 / 310376 / 312084
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

**MERRITT LAW**
S. Lee Merritt, Esquire
Attorney I.D. No.: 314891
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
slm@merrittatlaw.com

*Attorneys for Plaintiff*

| | |
|---|---|
| **BRAD RUSH, as ADMINISTRATOR OF THE ESTATE OF JEFFREY DENNIS, DECEASED** 123 S. Broad Street, Suite 2250 Philadelphia, PA 19109 | **COURT OF COMMON PLEAS** **PHILADELPHIA COUNTY** |
| **Plaintiffs,** | |
| v. | **FEBRUARY TERM 2019** |
| **THE CITY OF PHILADELPHIA,** c/o City of Philadelphia Law Department 1515 Arch Street – 14th Floor Philadelphia, PA 19102 | Civil Action No. _____ |
| **OFFICER RICHARD NICOLETTI, in his** official and individual capacity, c/o City of Philadelphia Law Department 1515 Arch Street – 14th Floor Philadelphia, PA 19102 | **MAJOR JURY PROGRAM** **JURY TRIAL DEMANDED** |
| **Defendants.** | |

## CIVIL ACTION COMPLAINT

**NOW COMES** Brad Rush, Esquire as duly appointed administrator of the Estate of Jeffrey Dennis, deceased, by and through chosen counsel Lee Merritt, Esquire, of Merritt Law and James J. McEldrew III, Esquire, Daniel Purtell, Esquire, and John J. Coyle, Esquire, of McEldrew Young, complaining of Defendants, the City of Philadelphia ("City"), more particularly the Philadelphia Police Department ("PPD"), by and through its agent and servant, Officer Richard Nicoletti, ("Nicoletti"),

Case ID: 190202728

individually and in his official capacity as a Philadelphia Police Officer, and in support thereof states the following:

## NATURE OF THE ACTION

1.  On August 20, 2018 Jeffrey Dennis was shot and killed by Philadelphia Police Department Officer Richard Nicoletti, who acted in an unreasonable and subjective manner, after PPD officers were directed to "box-in", "barricade" and/or "ram" Jeffrey Dennis with two unmarked police vehicles and surround him by six (6) unmarked, unidentified police officers.  The best evidence of the shooting, the relevant surveillance video, can be found at the following URL [https://www.nbcphiladelphia.com/news/local/No-Charges-Against-Philadelphia-Police-Officer-Involved-In-Fatal-Shooting-501933221.html].

2.  This is an action brought by the Plaintiff against Defendants, the City of Philadelphia, and its agent and servant, Police Officer Richard Nicoletti for his use of excessive and deadly force under the color of state law resulting in the unlawful shooting death of Jeffrey Dennis ("Dennis") in violation of his rights under the Fourth Amendment of the United States Constitution secured pursuant to 42 U.S.C. § 1983.

3.  Plaintiff alleges that the City of Philadelphia and its policy-maker, Police Commissioner Richard Ross, Jr. ("Ross" or "Policymaker") failed to properly train, supervise, screen, discipline, transfer, counsel or otherwise control officers who are known, or who should have been known, to engage in the use of excessive force and/or deadly force, including those officers repeatedly accused of such acts.  The Policymaker had a duty, but failed to implement and/or enforce policies, practices and procedures for the PPD that respected Jeffrey Dennis' constitutional rights. Defendant City and Ross's failure to adequately supervise, discipline, and train Defendant Nicoletti, failure to implement the necessary policies and procedures, and affirmative implementation of unconstitutional policies caused Jeffrey Dennis's unwarranted and excruciating physical and mental anguish and death.

Case ID: 190202728

4. Defendant Nicoletti acted in an objectively unreasonable manner and disregarded the rights of Jeffrey Dennis, knowing that the City and Police Commissioner Ross would approve and/or ratify his actions.

5. For these civil rights violations and other causes of action discussed herein, Plaintiff seeks redress and compensation for damages and the wrongful death of Jeffrey Dennis.

## **PARTIES**

6. Plaintiff, Brad Rush, is the duly appointed administrator for the Estate of Jeffrey Dennis, deceased, and is an adult individual with a principal place of business located at 123 S. Broad Street, Suite 2250, Philadelphia PA 19109.

7. Plaintiff, Brad Rush, has been designated as Administrator of the Estate of Jeffrey Dennis, deceased, by the remaining parents and natural guardians of Jeffrey Dennis' three surviving minor children:

    a. Tasha Hinton, as parent and natural guardian of S.D.,

    b. Lisa Holland, as parent and natural guardian of M.D., and,

    c. Tiffany Fortune, as parent and natural guardian of K.D.

8. Defendant Officer Richard Nicoletti, is and/or was at all times acting under color of state law in the scope and course of his duties as a police officer with the Philadelphia Police Department. He is being sued in his individual and official capacity as an employee of the Philadelphia Police Department. Defendant Nicoletti may be served via the City of Philadelphia Law Department, One Parkway Building, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102 or wherever he may be found. He is being sued in his individual and official capacity as an employee of the Philadelphia Police Department.

Case ID: 190202728

9. Defendant City is a city of the first-class organized pursuant to the laws of the Commonwealth of Pennsylvania and the Home Rule Charter. The City of Philadelphia operates the PPD, and along with Police Commissioner Ross is responsible for the implementation of the police department's budget, staffing, training, policies, procedures, practices, and customs. The City of Philadelphia may be served via the City of Philadelphia Law Department, One Parkway Building, 1515 Arch Street, 14th Floor, Philadelphia, PA 19102.

## JURISDICTION AND VENUE

10. Jurisdiction and Venue are proper in this Honorable Court as Defendants' intentional torts and otherwise violative conduct occurred in Philadelphia County.

## FACTS RELATED TO THE UNLAWFUL KILLING OF JEFFREY DENNIS

11. On or about, August 20, 2018 at approximately 3:30 p.m., six (6) men, driving two (2) separate unmarked vehicles, followed or pursued Jeffrey Dennis as he drove past an address associated with a police investigation.

12. The men, among them Defendant Nicoletti, were plainclothes narcotics police officers and believed Dennis to be a person of interest in an ongoing narcotics investigation.

13. The plainclothes officers did not have an arrest warrant for Dennis.

14. The plainclothes officers did not have any facts which would constitute probable cause to arrest Dennis at the time they pursued him.

15. Dennis did not commit any type of traffic violation to justify a stop of his vehicle.

16. At no time did probable cause exists that Jeffrey Dennis had committed a forcible felony or that he possessed a deadly weapon.

17. Nonetheless, after clandestine pursuit of Jeffrey Dennis for multiple blocks, the men – without probable cause, reasonable suspicion, or any lawful basis to do so – attempted to stop Dennis by illegally "boxing in" and "barricading" his vehicle at the corner of Hegermen Street and Princeton Avenue in Philadelphia.

18. Pedestrian surveillance equipment from a local business captured Jeffrey Dennis traveling along Hegermen Street approaching the intersection at Princeton Avenue.

19. A dark colored Nissan Altima ("vehicle 1") turned right onto Hegermen Street from Princeton Ave traveling the wrong way— "boxed-in" and "barricaded" the path of Dennis' vehicle.

20. The dark colored Nissan did not display any markings, sirens, or distinctive lighting, identifying it as a police vehicle.

21. The occupants of "Vehicle 1" did not display any badges, uniforms, or other clothing identifying themselves as law enforcement.

22. Dennis, unaware of the identity of the men who were then "boxing-in" and "barricading" his path, stopped his vehicle and began to reverse.

23. A second unmarked car ("vehicle 2") pulled up directly behind him, also "boxing-in" and "barricading" his path of retreat.

24. "Vehicle 2" also failed to display any markings, sirens or distinctive lighting that would identify it as a police vehicle.

25. One of the occupants of "Vehicle 2" donned a black vest and the other wore what appeared to be a badge around his neck. These men, however, remained to the rear of Dennis' vehicle and out of his line of sight.

26. Dennis maneuvered his vehicle forward and to the right at the same time as "Vehicle 1" in front of him moved further into his path again "boxing-in" and "barricading" him.

Case ID: 190202728

27. Six unidentified men exited the two unmarked vehicles and began shouting profanity and brandishing firearms at the closed windows of Dennis' car.

28. According to an independent witness, the men did not verbally identify themselves as police officers.

29. One plainclothes officer banged his handgun against the glass of Dennis' front passenger window and pointed the weapon menacingly into the car.

30. A second plainclothes officer struck the driver side window with a metal object causing the glass to shatter.

31. Dennis, in a panic perceiving an attack from unidentified armed men, continued to maneuver his vehicle forward and away from the assailing men albeit at a slow rate of speed.

32. As Dennis moved forward, one of the unidentified men reached through the broken glass and into the cabin of the vehicle.

33. As Dennis' car continued in motion, the driver of "Vehicle 1" inched his car forward obscuring the clear pathway of the man reaching into the vehicle.

34. The man immediately withdrew his hands from the interior of Dennis' vehicle and shuffled away. The man then walked around to the back of a parked vehicle on Hegermen Street and disengaged from the altercation.

35. Continuing in his attempt to maneuver away from the attack by the unknown men, Dennis pulled his car forward and to the right.

36. The driver of "Vehicle 1" accelerated the car forward and "rammed" into the front driver side area of the Dennis' car— disabling the vehicle.

37. With Dennis' vehicle completely immobilized, several men were observed holstering their weapons – an objective indication that any possible perception of a threat had resolved.

Case ID: 190202728

38. Richard Nicoletti, however, continued to pace back and forth with his weapon drawn— looking for an opportunity to take a clear shot into the vehicle.

39. Once the vehicle came to a complete stop Nicoletti pointed his firearm directly at Dennis through the broken driver side window.

40. With Dennis just feet away from Nicoletti— Dennis observed Nicoletti pointing the weapon directly at him and, according to an independent witness responds "you drawing!"

41. Nicoletti then fired three shots from point blank range striking Dennis in the head and chest, killing him.



42. Nicoletti then holstered his weapon and walked over to Dennis' vehicle and reached inside the cabin of Dennis' vehicle.

43. Nicoletti then went to "Vehicle 2" parked to the rear of Dennis' vehicle and then returned to Dennis' vehicle and re-entered the cabin through the passenger side door for an unknown purpose.

44. Defendant Nicoletti was acting under the color of state law when he shot and killed Dennis.

45. Moreover, no reasonably competent official could conclude that the actions of Defendant Nicoletti described herein did not violate Dennis's constitutional rights.

Case ID: 190202728

46. No reasonably prudent police officer, under similar circumstances, could have believed that Defendant Nicoletti's conduct was justified, nor was the treatment of Dennis reasonable.

47. There was nothing to indicate that the use of excessive and/or deadly force was justified.

48. To the contrary, the objective actions of the other officers in the area indicated that the situation had been controlled and that any possible perception of a threat had resolved.

49. Jeffrey Dennis posed no risk to Defendant Nicoletti or any other person when Defendant Nicoletti shot Dennis three (3) times, killing him.



Case ID: 190202728

## PPD DIRECTIVE 9.4 – VEHICULAR PURSUITS

50. Under directive 9.4 a "vehicle pursuit" is defined as "[t]he use of a motor vehicle to chase, follow, or go after a vehicle that has refused to stop."

51. Philadelphia Police Department Directive 9.4 – Vehicular Pursuits requires the following:

    a. "1 (A) (1) the **primary consideration** when participating in or supervising any pursuit **is the safety and welfare of the public, other officers, as well as the suspect(s).** Every officer and supervisor must always weigh the benefits of immediate capture with the risks inherent to the pursuit itself."

52. Under directive 9.4 a Philadelphia Police Officer is justified in initiating pursuit only when they are:

    a. "1 (B) (1) (a) in close proximity to a suspect vehicle and **believes a pursuit is necessary to prevent the death or serious bodily injury of another person, or**

    b. (b) In close proximity to a suspect vehicle and believes BOTH:

        i. **(1) The pursuit is necessary to effect the arrest or prevent escape, AND**

        ii. **(2) The officer has probable cause to believe that the person being pursued has committed or attempted a forcible felony OR, has probable cause to believe that the person being pursued possess a deadly weapon, other than the vehicle itself."**

53. When considering whether a pursuit should be initiated, numerous factors are to be considered, specifically "4(A)(1)(b) Whether the suspect's identification and address are known, thereby making available an alternate means of arrest (e.g. via an arrest warrant).... ."

54. During a vehicular pursuit, pursuant to PPD Directive 9.4 (3) (l) officers must maintain a "safe distance" of at least five car lengths.

55. Additionally, "[f]leeing vehicles will not be stopped under any circumstances by the following techniques:

    a. "3(O) (1) **Boxing-In** – Surrounding the fleeing vehicles with police vehicles, which are then slowed to a sop with the fleeing vehicle."

    b. "O (2) **Ramming** – The deliberate act of hitting a fleeing vehicle with a police vehicle for the purpose of forcing the fleeing vehicle off the road or into a fixed object."

Case ID: 190202728

c.   "O (3) **Roadblocks** – The use of barricades, vehicles or other obstructions across a roadway to stop a fleeing vehicle."

56. Upon apprehension of the suspect, "4 (A) (5) Apprehend the suspect(s), or by ensuring that **only the proper amount of force is used to make any arrests.**"

57. The abject failure to comply with Directive 9.4 was a direct result of a systemic failure to train and supervise the officers involved in the unlawful seizure and killing of Jeffrey Dennis, including but not limited to, Officer Nicoletti.

58. Despite the PPD Directive, it is common practice among Philadelphia Police Officers to use "boxing-in," "ramming," and "roadblock" techniques.

59. Upon information and belief, this practice is particularly commonplace among narcotics teams and undercover teams.

60. Upon information and belief, the boxing in of Plaintiff in this case was ordered by the supervisor of the narcotics team, further evincing the PPD custom of utilizing these allegedly prohibited techniques.


## PPD DIRECTIVE 10.1 – USE OF FORCE

61. In response the Philadelphia police department issues "Directive 10.1 – Use of Force – Involving the Discharge of Firearms", which states in relevant part:

a.   "1 (A) It is the policy of the Philadelphia Police Department that **officers hold the highest regard for the sanctity of human life, dignity, and liberty of all persons.** The application **of deadly force is a measure to be employed only in the most extreme circumstances and all lesser means of force have failed or could not be reasonably employed.**

b.   1 (B) The **most serious act in which a police officer can engage during the course of their** official duties **is the use of deadly force. The authority to carry and use firearms in the course of public service is an immense power, which comes with great responsibility.**

c.   1 (C) Police Officers shall not use deadly force against another person, unless they have an **objectively reasonable belief** that they must protect themselves or another person from **death or serious bodily injury. Further, an officer is not justified in using deadly force at**

Page 10 of 23

any point in time when there is no longer an objectively reasonable belief that the suspect is dangerous, even if deadly force would have been justified at an earlier point in time."

62. The directive defines "objectively reasonable" as where "an officer's belief that they must protect themselves or others from death or serious bodily injury is compared and weighed against what a reasonable or rational officer would have believed under similar circumstances."

63. In making this determination the "totality of the circumstances" must be considered, with three factors are identified as:

   a. "(2)(A)(1) the severity of the crime at issue.

   b. (2)(A)(2) whether the suspect poses an immediate threat to the safety of the officers of or others,

   c. (2)(A)(3) whether the suspect is actively resisting arrest or attempting to evade arrest by flight."

64. Directive 10.1 specifically notes that "...flight alone would not justify the use of deadly force."

65. Deadly force, such as shooting a non-violent suspect three (3) times from point blank range is only "authorized when the officer has an **objectively reasonable belief** that they must protect themselves or another person from the immediate threat of death or serious bodily injury."

66. When considering the use or potential use of deadly force, officers are specifically prohibited from the following:

   a. "**E. Police officers shall ensure their actions do not precipitate the use of deadly force by placing themselves or others in jeopardy by taking unnecessary, overly aggressive, or improper actions.** It is often a tactically superior police procedure to withdraw [or not engage], take cover or reposition, rather than the immediate use of force."

   b. "**H. Police officers shall not discharge their firearms AT a vehicle unless a person in the vehicle is immediately threatening the officer or another person with deadly force by means other than the vehicle** (e.g., officers or civilians are being fired upon by the occupants of the vehicle).

      iii.   1. <u>A moving vehicle alone shall not presumptively constitute a threat that justifies an officer's use of deadly force</u>.

      iv.   2. Officers shall not move into or remain in the path of a moving vehicle. **Moving into or remaining in the path of a moving vehicle, whether deliberate or inadvertent, SHALL NOT be justification for discharging a firearm at the vehicle or any of its occupants.** An officer in the path of an approaching vehicle shall attempt to move to a position of safety rather than discharging a firearm at the vehicle or any of the occupants of the vehicle.

NOTE: An officer should never place themselves or another person in jeopardy in an attempt to stop a vehicle.

      v.      3. The prohibitions regarding the discharge of a firearm at or from a moving vehicle exist for the following reasons:

      1.      a. To avoid unnecessarily endangering innocent persons, both when inside the vehicle and in the vicinity.

      2.      b. Bullets fired at a moving vehicle are extremely unlikely to disable or stop the vehicle.

      3.      c. Disabling the driver of a moving vehicle creates unpredictable circumstances that may cause the vehicle to crash and injure other officers or innocent bystanders.

      4.      d. Moving to cover in order to gain and maintain a superior tactical advantage maximizes officer and public safety while minimizing the need for deadly or potentially deadly force.

      5.      NOTE: Barring exigent circumstances, (e.g., the driver is unconscious and the motor is still running), **an officer shall never reach into an occupied vehicle in an attempt to shut off the engine or to recover evidence, since this has been known to result in serious injury to officers.**"

67. The abject failure to comply with directive 10.1 was a direct result of a systemic failure to train and supervise the officers involved in the unlawful killing of Jeffrey Dennis.

## FAILURES OF THE PHILADELPHIA POLICE DEPARTMENT

68. Between 2007 and 2013 Philadelphia police officers shot more than four hundred (400) people.

69. In August of 2013, the Philadelphia Police Department asked the Department of Justice ("DOJ") to intervene and investigate the institutional policies and practices that resulted in the high incidence of police shootings.

70. On March 24, 2015 the Department of Justice issued their report entitled "An Assessment of Deadly Force in the Philadelphia Police Department."

71. Of relevant note, the DOJ identified that between 2007 and 2013, roughly 8% of officer involved shootings (30 incidents) involved moving vehicles.

72. Between the request for DOJ involvement, and the issuance of the DOJ report an additional four (4) officer involved shootings of a moving vehicle occurred.

73. Since the issuance of the DOJ report and subsequent PPD directives, an additional four (4) incidents of officers shooting into moving vehicles have occurred – totaling thirty-eight instances since 2007, including the unlawful killing of Jeffrey Dennis.

74. The conclusion of the DOJ was that "[t]he department's policy does not provide enough limitation on this practice"

75. The recommendation of the DOJ was that "[t]he PPD should amend its policy and include a stronger prohibition on shooting at moving vehicles."

76. Additionally, the DOJ Report, noted the following:

    a. PPD officers do not receive a regular, consistent training on the department's deadly force policy;

    b. PPD officers are not adequately trained on the use of deadly force;

    c. PPD's use of force polices are fragmented and confusing;

    d. PPD officers are not provided sufficient alternatives to the use of deadly force;

    e. PPD officers are not adequately trained on techniques to de-escalate citizen encounters and thus reduce the use of deadly force;

    f. PPD's disciplinary mechanism is inconsistent, subject to chronic delays, and frustrated by inadequate investigations;

    g. Even in cases where officers were found to have violated department policy during a shooting incident, 73% of those officers were not suspended or terminated, and

    h. In a city where Blacks and Whites each amount to 45% of the population, almost 60% of the officers involved in shootings from 2007-2013 were White, while 81% of the involved suspects were Black.

77. The DOJ Report is substantive evidence of the City's practice of failing to properly train and discipline officers.

78. The DOJ Report coupled with the more than four hundred (400) police shootings including thirty eight (38) involving moving vehicles sufficiently put policymakers on notice of the need for more or better training.

Case ID: 190202728

79. Despite this notice, the City failed to adequately implement the DOJ's recommendations.

80. The City's failure to properly train, supervise, and/or discipline officers, including but not limited to Officer Nicoletti, was a substantial factor in causing the death of Jeffrey Dennis.

81. The City's deliberate indifference, evidenced by its failure to take appropriate action in response to the DOJ's report to reduce the number of police shootings generally and shootings into moving vehicles specifically, was a moving force in the death of Jeffrey Dennis.

82. The City's refusal or failure to discipline officers who violated department policy is well known to the members of the PPD.

83. Additionally, PPD officers are aware that even if they are terminated or disciplined, the City's policy of discipline arbitration will likely reverse any instituted discipline.

84. The reversal of discipline though the City's arbitration process is commonplace, examples include, *inter alia*:

   a. Cyrus Mann – Mann shot three (3) individuals in just over three (3) years, with the final shooting in 2014 proving to be fatal.  The final shooting, which involved Mann discharging his firearm into a moving vehicle, prompted then Commissioner Charles Ramsey to terminate Mann. However, the City's discipline arbitration procedure resulted in Mann being reinstated, receiving back pay, and having his disciplinary record purged of any and all findings of misconduct related to the matter.

   b. Six Narcotics Field Unit Officers – Michael Spicer, along with five (5) of his colleagues on the Narcotics Field Unit, was arrested by federal authorities and charged with a variety of charges including corruption.  Then Police Commissioner Charles Ramsey terminated the officers calling the situation one of the worst corruption cases he's ever seen.  However, the City's arbitration process reinstated all six (6) officers and awarded them $90,000 in back pay.

   c. Jonathan Josey – Josey was terminated after he sucker punched a woman on video at the Puerto Rican Day Parade in 2012.  Josey invoked the City's arbitration process, was reinstated, and retained his rank.

85. The Philadelphia Police Advisory Commission ("PAC") is the official civilian oversight agency of the City of Philadelphia for the Philadelphia Police Department.

86. In 2014, the PAC completed an investigation into the City's arbitration process by reviewing twenty-six (26) cases where officers were terminated for conduct ranging from domestic incidents and

Case ID: 190202728

retail theft to excessive force and on-the-job intoxication. Of those twenty-six (26) terminations, the City's arbitration process resulted in 19 officers (73%) being reinstated.

87. The PAC concluded that "[a]rbitrations involving Philadelphia police officers, particularly those fired for serious misconduct, have been a source of frustration and public scrutiny for more than three decades," and recommended the City conduct and in-depth review of why police officers fired from the department were so frequently reinstated through arbitration.

88. Police Commissioner Richard Ross has acknowledged that the City's discipline arbitration procedure results in the inability to remove bad officers from the police force, stating: "[t]here are occasions that you are frustrated...because you'll get people who get their jobs back and you are completely baffled and dismayed by it."

89. Commissioner Ross has further noted the damage it does to community police relations stating: "[p]olice chiefs struggle to maintain trust and legitimacy in their respective communities, and it can be difficult to do that in cases when the community sees an officer or officers dismissed — and then they are ultimately brought back."

90. The refusal or failure to discipline officers for misconduct, coupled with the City's arbitration process which practically guarantees any discipline will be overturned, combine to create an environment where officers know they will face no repercussions for inappropriate behavior.

91. The City also has a history of failing to properly train plainclothes officers to identify themselves or otherwise properly interact with individuals.

92. In April of 2014, plainclothes officers shot a pizza delivery boy named Phillipe Holland in the head after failing to identify themselves.

Case ID: 190202728

93. Similar to this matter, the plainclothes officers lacked probable cause to stop Holland and approached him without properly identifying themselves.   When Holland attempted to flee the plainclothes officers in his vehicle, the officers opened fire striking Holland in the head.

94. A civil lawsuit was filed resulting from that incident, and as part of the settlement agreement reached in January of 2017, the City agreed to institute new training protocols for plainclothes officers' dress and behavior to make it clear they are police. *See* Whelan, A. *A Police Shooting So Wrong that Philadelphia Agreed to the Largest Settlement in Department History.* Philly.com (January 6, 2017).

95. Despite knowledge of the need to institute new training and protocols, upon information and belief, the City failed to properly implement a comprehensive training program and failed to train the undercover officers involved in the incident that led to the fatal shooting of Dennis.

96. The deliberate indifference to the need to implement new comprehensive training programs was a moving force in the fatal shooting of Jeffrey Dennis.

97. Upon information and belief, Defendant Nicoletti has been the subject of complaints and was otherwise previously investigated by the PPD for incidents involving unlawful stops, excessive use of force, unprofessional conduct, and discharging his firearm.

98. The failure to properly investigate or discipline Defendant Nicoletti conveyed a tacit endorsement of his inappropriate and unlawful conduct.

99. This failure to properly investigate and discipline Defendant Nicoletti was a moving force in the death of Jeffrey Dennis.

Case ID: 190202728

## THE LIFE OF JEFFREY DENNIS

100.    Jeffrey Dennis was thirty-six (36) years old when he was killed by Defendant Nicoletti.

101.    Dennis was loved by this three (3) surviving minor children, recent fiancé, and tight knit extended family. He was in good health, with a reasonable expectancy of living at least forty-eight (48) more years to age eighty-four (84).

102.    During his lifetime, Dennis was an active parent and a benefit to his community as a football coach. He gave support, advice, counsel, comfort, care, and protection to his family.

103.    Dennis was a hard-working man.  At the time of his killing, he was employed, working at the Tastykake factory.

104.    Jeffrey was a significant source of financial and emotional support to his three (3) children. His daughter S.D. resided with Dennis at the time of his death.

105.    As a direct and proximate result of the Defendants' conduct, Plaintiff's beneficiaries have sustained substantial damages, pecuniary loss, and the irreplaceable loss of love and support from their father.

## WRONGFUL DEATH ACTION

106.    Plaintiff, Brad Rush, as appointed by the parents and natural guardian of the minor children of Jeffrey Dennis, raised the Estate of Jeffrey Dennis, file number A5030-2018 on December 14, 2018.

107.    Plaintiff, Brad Rush, as Administrator of the Estate of Jeffrey Dennis, deceased, hereby brings Wrongful Death claims pursuant to 42 Pa.C.S. §8301 (the Pennsylvania Wrongful Death Statute) and Pa.R.C.P. 2202(a), on behalf of all those persons entitled by law to recover damages as a result of the wrongful death of Jeffrey Dennis.

Case ID: 190202728

108.     The names and address of all persons legally entitled to recover due to the wrongful death

of Jeffrey Dennis are:

a.  Tasha Hinton, as p/n/g of S.D., a minor
    6014 Allman Street
    Philadelphia, PA 19142

b.  Lisa Holland, as p/n/g of M.D., a minor
    3352 Disston Street
    Philadelphia, PA 19149

c.  Tiffany Fortune, as p/n/g of K.D., a minor
    100 W. Montgomery Avenue, Unit 7
    Ardmore, PA 19003

109.     No other action has been brought to recover for Mr. Jeffrey Dennis' death under the

aforementioned statute(s).

110.     Plaintiff claims all available damages under the Pennsylvania Wrongful Death Statute for

financial contributions and the loss of future services, support, society, comfort, affection, guidance,

tutelage, and contribution that the Plaintiff's decedent, Jeffrey Dennis, would have rendered to the

wrongful death beneficiaries but for her traumatic, untimely and unnatural death occurring as a result of

the medical treatment which is subject to the present litigation.

111.     Plaintiff claims damages for payment for all medical bills and/or expenses.

112.     Plaintiff claims damages for payment of funeral and burial expenses.


**SURVIVAL ACTION**

113.     Plaintiff also brings a Survival Action under the Pennsylvania Survival Statute, 42 Pa.C.S.

§ 8302, and pursuant to 20 Pa.C.S. § 3373, for all damages recoverable under the Statute, including but

not limited to, loss of income both past and future income potential, as well as, pain and suffering prior to

Case ID: 190202728

death, and for emotional distress suffered by Plaintiff's decedent, Jeffrey Dennis, from the initiation of the assault upon him until the ultimate cause of his death.

### COUNT 1: 42 U.S.C. § 1983 EXCESSIVE FORCE
### AGAINST DEFENDANT, OFFICER RICHARD NICOLETTI, INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY

114.   Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

115.   Plaintiff would show that Defendant Nicoletti's actions on the occasion in question were wrongful, malicious and reckless in depriving Dennis of his constitutional rights.

116.   Plaintiff would show that Defendant Nicoletti failed to act as an objectively reasonable officer would have acted in the same or similar circumstances. That is, Defendant Nicoletti, without legal or necessary justification or the need to do so, used excessive and deadly force as described above and killed Jeffrey Dennis.

117.   Plaintiff would show that Defendant Nicoletti denied Dennis of his right to be free from the use of excessive force in violation of the 4th Amendment to the United States Constitution.

118.   The force used by Defendant Nicoletti was objectively unnecessary, excessive and unreasonable under the circumstances, as Dennis did not pose an immediate threat to the safety of Defendant Nicoletti or others. Defendant Nicoletti embarked on a willful, malicious, reckless and outrageous course of conduct that was intended to cause and, in fact did cause Dennis' death and plaintiff's to suffer extreme and severe mental and emotional distress, anxiety, terror and agony.

119.   Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

Case ID: 190202728

**WHEREFORE,** Plaintiff demands judgment in his favor, and against Defendant Nicoletti pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other remedies legally appropriate.

## COUNT II: MUNICIPAL LIABILITY
### AGAINST DEFENDANT, THE CITY OF PHILADELPHIA

120.   Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

121.   The conduct of Defendant Nicoletti as set forth in the preceding paragraphs evinces the excessive and unreasonable use of force in violation of Jeffrey Dennis' constitutional rights.

122.   The conduct set forth herein, as well as the training and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to properly train officers on the probable cause and reasonable suspicion to stop or otherwise detain a citizen, the use of deadly force, the excessive use of force, identification of an actual or imminent threat of death or serious bodily injury, techniques for detaining individuals in motor vehicles, approaching individuals in motor vehicles, interactions between plainclothes officers and members of the public, and proper identification by plainclothes officers which was a moving force in the deprivation of Jeffrey Dennis's constitutional rights.

123.   Prior to August 20, 2018, the Philadelphia Police Department knew or should have known of these training failures through the Department of Justice report, complaints filed against PPD officers, civil lawsuits, and settlements, among other means.

124.   The conduct set forth herein, as well as the training and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to enforce the written policies regarding probable cause and reasonable suspicion to stop or otherwise detain a citizen, the use

Case ID: 190202728

of deadly force, the excessive use of force, identification of an actual or imminent threat of death or serious bodily injury, techniques for detaining individuals in motor vehicles, approaching individuals in motor vehicles, interactions between plainclothes officers and members of the public, and proper identification by plainclothes officers which was a moving force in the deprivation of Jeffrey Dennis' constitutional rights.

125.    The conduct set forth herein, as well as the supervision and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to supervise and discipline Police Officers who use excessive force, and by doing so communicated tacit approval of the unlawful and unconstitutional excessive use of force, particularly in shooting incidents, which was a moving force in the deprivation of Jeffrey Dennis's constitutional rights.

126.    The conduct set forth herein, as well as the supervision and disciplinary failures of the Philadelphia Police Department demonstrates that the City of Philadelphia failed to supervise and discipline Defendant Nicoletti, and by doing so communicated tacit approval of his unlawful and unconstitutional behavior which was a moving force in the deprivation of Jeffrey Dennis's constitutional rights.

127.    By reason of the aforementioned policies and practices of Defendant, Plaintiff's beneficiaries experienced severe pain and suffering and the loss of their father, for which they are entitled to recover damages. The aforementioned acts and omissions also caused decedent's pain and suffering, loss of enjoyment of life, and death.

128.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

Case ID: 190202728

**WHEREFORE,** Plaintiff demands judgment in his favor, and against Defendant the City of Philadelphia pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

### COUNT III - ASSAULT AND BATTERY
### AGAINST DEFENDANT NICOLLETTI

129.    Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

130.    At or about the dates and places alleged herein, Defendant Nicoletti, while acting within the course and scope of his duties as a Police Officers for the PPD, without provocation, warrant, necessity, or legal justification, assaulted and battered Jeffrey Dennis by pointing his gun at Dennis and shooting him at least three (3) times, thereby causing Dennis's injuries and death as herein described.

131.    Plaintiff seeks survival damages, as stated above, including for the nature and extent of Decedent's injuries, pre-death pain and suffering, emotional distress, and loss of life and enjoyment of life, as well as all available wrongful death damages available under the law.

**WHEREFORE,** Plaintiff demands judgment in his favor, and against Defendant Nicoletti, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, and any other damages legally appropriate at the time of jury trial.

Case ID: 190202728

## COUNT IV – PUNITIVE AND EXEMPLARY DAMAGES
### AGAINST DEFENDANT NICOLLETTI

132.   Plaintiff hereby incorporates all preceding paragraphs as if fully stated herein.

133.   The conduct of Defendant Nicoletti was malicious, willful, and wanton.

134.   Accordingly, Plaintiff requests punitive and exemplary damages to deter this type of conduct in the future. In the alternative, such heedless and reckless disregard of Dennis' rights, safety and welfare is more than momentary thoughtlessness, inadvertence or misjudgment. Such unconscionable conduct goes beyond the bounds of acceptable society, and as such Plaintiff requests punitive and exemplary damages be awarded against Defendants Nicoletti.

**WHEREFORE**, Plaintiff demands judgment in his favor, and against Defendants, jointly and severally, pursuant to 42 U.S.C. § 1983, in an amount in excess of One Hundred and Fifty Thousand Dollars ($150,000.00), including interest, delay damages, costs of suit, general and specific damages, including both survival and wrongful death damages, exemplary damages as provided by law, attorneys' fees under U.S.C. 1985 and 1988, and any other damages legally appropriate at the time of jury trial.

Respectfully Submitted,

**McELDREW YOUNG**

James J. McEldrew, III, Esquire
Daniel Purtell, Esquire
John J. Coyle, Esquire
Attorney I.D. No.: 36411 / 310376 / 312084
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
jim@mceldrewyoung.com
dpurtell@mceldrewyoung.com
jcoyle@mceldrewyoung.com

Dated: February 27, 2019

**MERRITT LAW**

/s/ S. Lee Merritt
S. Lee Merritt, Esquire
Attorney I.D. No.: 314891
123 S. Broad Street, Suite 2250
Philadelphia, PA 19109
(215) 545-8800
slm@merrittatlaw.com

*Attorneys for Plaintiff*

Case ID: 190202728

## VERIFICATION

I, Brad Rush, as Administrator of the Estate of Jeffrey Dennis, deceased, hereby states that

he is the attorney for the Plaintiff in the within matter and verifies that the statements made in the

foregoing Motion are true and correct to the best of his knowledge, information and belief.  The

undersigned understands that the statement therein is made subject to the penalties of 18 Pa.C.S.A.

Section 4904, relating to unsworn falsification to authorities.


_____

BRAD RUSH, Administrator of the
ESTATE OF JEFFREY DENNIS, deceased


Date: February 27, 2019